## Joseph Dyas et al. v. Charles D. C. Dyas.

DECREE—*when not disturbed as against the evidence.* A decree will not be disturbed on review, in the absence of errors of law, as against the evidence, unless the findings of the chancellor are manifestly against the preponderance of the evidence.

Bill of interpleader. Appeal from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the November term, 1906. Affirmed. Opinion filed June 1, 1907.

MATTHEWS & ANDERSON, for appellants.

WILLIAM MUMFORD, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

In December, 1902, appellants, Joseph Dyas and Mary A. Dyas, husband and wife, and appellee, Charles D. C. Dyas, a son of appellants, purchased a farm in Pike county, Illinois, for $20,800, which consideration was contributed by the respective parties and made up as follows: Joseph Dyas $8,000, consisting of a hotel property at Sandwich, Illinois; Charles Dyas $5,000 in cash; Mary A. Dyas $2,000 in cash, of which amount $1,350 was contributed on December 6, 1902, and $650

at a later date before the transaction was finally con-
summated; the assumption of a mortgage on the prem-
ises for $4,500, and a note for $1,300 payable to one Mc-
Gowan. The title to the farm was taken in the name of
Joseph Dyas and Charles D. C. Dyas. It is not contro-
verted that it was understood and agreed at the time
the farm was purchased that the interest of Mary A.
Dyas therein should be two-sevenths of the one-half
owned by Charles, and that Charles should give to his
mother a bond, or mortgage, or some instrument in
writing evidencing or securing her said interest in the
farm. December 6, 1902, Charles gave to his mother
a note, as follows:

"SANDWICH, ILLINOIS, Dec. 6, 1902.
Thirty days after date I promise to pay to Mary A.
Dyas the sum of $1,350.00 in contract on farm.
CHARLES D. C. DYAS."

In December, 1905, one Ream, a real estate agent
in Missouri, negotiated a sale of the farm to O. H.
Damon of Gibson City, Illinois, whereby the owners
were to realize $20,800, less the agent's commission
of $1,040, as follows: $7,260 in cash; one note for
$6,700 dated December 12, 1905, payable to Joseph and
Charles Dyas, on or before March 1, 1906, at the bank
of Mattinson, Wilson & Co., Gibson City, Illinois; the
purchaser assuming the payment of a mortgage on
the premises for $4,500, and a note for $1,300 payable
to McGowan.

While the negotiations for a sale of the farm were
pending, Charles Dyas, accompanied by Ream, went to
the house of appellants in Sandwich, Illinois, for the
purpose of inducing them to sell the farm, and to ar-
range for a division of the proceeds. On that occa-
sion, after some controversy between the parties, the
terms of the sale to Damon were agreed upon, as above
stated, and Ream drew up an instrument, which was
signed by them, as follows:

"SANDWICH, ILLS., 11-8, 1905.
This agreement entered into this day by and be-

tween Chas. D. C. Dyas of the first part and Joseph Dyas and Mary A. Dyas, his wife, of the second part, agree to give to Chas. D. C. Dyas $6,300 and all of the corn crop of 1905 and all the stock and tools on the farm now owned and known as the Joseph & Chas. D. C. Dyas farm situated in Pike Co., Levee township and State of Illinois.

Witness our hands and seals this day and date above written signed in presence of I. J. Ream.

> Chas. D. Dyas,
> Mary A. Dyas,   [Seal.]
> Joseph Dyas."

Upon the face of the instrument and below the signatures, the word "over" is written, and on the back thereof appears the following: "one note of $6700 due March first, 1906, without interest, $7,260 dollars in cash, and of this amount, $6,300 in cash goes to Chas. D. C. Dyas when deed is delivered to Mattinson & Wilson Bank at Gibson City, Ill., which is mutually agreed upon by all concerned."

The cash payment of $7,260 was received by Joseph Dyas, and thereafter the note for $6,700 was paid by Damon to Mattinson, banker at Gibson City. Thereupon Mattinson, Wilson & Co. filed their bill of interpleader, alleging the payment to them of said sum of $6,700; that said money was claimed by appellants Joseph and Mary Dyas, and by Charles Dyas and that each of said parties had notified the complainants of their respective claims and threatened suit to recover the same. The appellants and Charles Dyas were made parties defendant to the bill of interpleader and filed their respective answers thereto.

The answer of Joseph Dyas admits the receipt by him of $7,260, being $280 in excess of one-half of the purchase price of the farm. His answer further asserts the right of Mary Dyas to $2,000 of the proceeds of said farm and offers to turn over to her the $280 in his hands to apply on her claim. The answer of Mary Dyas alleges the payment by her of $2,000 upon the purchase price of the farm; the agreement

that in consideration thereof she should have a two-sevenths in the one-half interest in the farm conveyed to Charles Dyas, and the giving to her by said Charles Dyas of the note for $1,350, heretofore mentioned.

The answer of Charles Dyas sets up the agreement of November 8, 1905, as a final settlement of all matters of difference between the parties as to the division of the proceeds of the farm, and as establishing his right to $6,300 of said proceeds.

It is conceded that the bill of interpleader was properly filed.

The decree of the Circuit Court finds that by virtue of the agreement of November 8, 1905, Joseph and Mary Dyas agreed to give to Charles Dyas $6,300 out of the purchase price of the farm and all the corn crop of 1905 and all the stock and tools on said farm; that the claim of Mary Dyas for $1,350 and for $650 for moneys claimed to be advanced by her to Charles Dyas cannot under the pleadings and evidence be sustained; that the decree shall be without prejudice to Mary Dyas as to her said claims, and that her said claims cannot be adjudicated in the proceeding for the reason they are without equity. The decree dismisses the claims of Mary Dyas for want of equity, and directs Mattinson, Wilson & Co. to pay to Charles Dyas out of the moneys paid to them by O. H. Damon on his note for $6,700, the sum of $6,300, and to pay to Mary Dyas the excess over $6,300.

Appellants attack the agreement of November 8, 1905, upon the ground of fraud, alleging that it was signed by them at a time when they were unable, on account of failing sight and darkness, to read the agreement; that the contents of the agreement was misrepresented to them by the agent, Ream; that they relied upon Ream to read the agreement to them and that he fraudulently misread the same. It may well be doubted whether the word "over" which appears on the face of the agreement and the matter which appears on the reverse side of the sheet was written

upon the instrument when it was signed by appellants, but an examination of the records fails to disclose that fraud was practiced in securing the signatures of appellants to the agreement which precedes their signatures.

It is insisted on behalf of appellee that the agreement mentioned constituted a complete and final settlement of all matters in controversy between appellee and Joseph and Mary Dyas, and of any claim against appellee growing out of the contribution by Mary Dyas of the sum of $2,000 toward the purchase price of the farm.

The evidence tends to show that upon the occasion when the agreement was signed, appellee spent several days at the home of appellants, and that during that time there was much controversy regarding certain claims which appellee was urging, growing out of transactions covering a long period of years. The claims made by appellee appear to have related to money due him for services while appellant Joseph Dyas was conducting a hotel and for money advanced during that period.

There was also a claim by appellee that his father had appropriated the proceeds of a note for $250 belonging to appellee, and a counter claim by Joseph Dyas arising out of a transaction regarding certain railroad securities.

While the evidence bearing upon the claims of the respective parties is too vague and uncertain to enable us to arrive at any satisfactory conclusion as to their merits, it is beyond doubt that such claims were the subject of controversy between the parties upon the occasion when the agreement was signed, and the evidence warrants the conclusion that such claims were taken into consideration in arriving at the terms of the agreement.

There is evidence tending to show that the proposition to give appellee $6,300 of the proceeds of the sale, and the corn crop and personal property on the

farm, emanated from Mary Dyas; that appellee had insisted that he be paid $7,000 in cash in addition to the crop and personal property, and that he accepted the terms embodied in the agreement as being the best, obtainable.

The evidence further justifies· the conclusion that the claim of Mary Dyas against appellee for $2,000 contributed by her toward the purchase price of the farm was settled by the agreement. The proceeds of the sale available for division between the parties in interest amounted to $13,960. Of this amount, not considering any claims arising out of other matters, Joseph and Charles Dyas would each be entitled as among themselves, to one-half, or $6,980. It is clear that the purpose of the agreement was to fix the amount which appellee was to receive, and not to determine the respective interests of the several parties in the entire proceeds, because the entire proceeds are not mentioned in the agreement, and no disposition is made of the remainder of the proceeds not given to Charles Dyas. If the only purpose of the agreement had been to secure a division of the proceeds between Joseph and Charles Dyas there would have been no occasion for Mary Dyas to become a party to it and the fact that she was a party to it strongly suggests that it was entered into for the purpose of settling the rights of appellee as against both of the appellants. The only reasonable inference to be drawn is, that Joseph and Mary Dyas had entered into some arrangement relative to the division between themselves of the remainder of the proceeds.

True, Mary Dyas did not, at the time the agreement was made, surrender to Charles his note for $1,350 which she then held, but we do not consider this circumstance sufficient in itself to negative the conclusiveness of the agreement as a settlement of her claim against Charles. There is evidence tending to show that in consideration of the settlement evidenced by the agreement Joseph Dyas promised to pay his wife

the amount of her claim against Charles, and that when the latter requested his mother to surrender his note, she refused to do so upon the ground that she had not then received the money due her, and desired to retain the note as evidence of the debt.

A correct solution of the issues here involved is dependent upon the weight to be given to the testimony of the several witnesses. The evidence is conflicting, and the chancellor who saw and heard the witnesses testify was manifestly much better able to weigh their testimony and arrive at the truth than we are.

A careful consideration of the record fails to disclose that the findings of the chancellor are palpably erroneous, and the decree will be affirmed.

*Affirmed.*